And we will hear argument in Eastman v. Marshall. Counsel, you may proceed. Thank you. Good morning again, Your Honors. May it please the Court, I'm Deputy Attorney General Kim Ahrens, appearing on behalf of the appellant and respondent in this matter, and I would like to reserve two minutes for rebuttal. This appeal was brought because the district court misapplied the standard of review under the AEDPA. Under the AEDPA, the only controlling authority that is relevant is United States Supreme Court authority, and the only clearly established Supreme Court authority in parole decision is Greenhalgh's. And presuming a liberty interest exists, Greenhalgh's has said that inmates are entitled to an opportunity to be heard and a statement of reasons that he or she falls short of suitability. Counsel, in this case, as in the previous one, you seem determined for us not to follow our own precedents, even on other habeas cases, raising these same issues. But I really don't understand why you need to push that. I mean, under our existing precedents, speaking only for myself, of course, it seems to me that there is plenty of evidence that would be supportive of the decision to deny parole. So do you need this new theory to win? Well, Your Honor, with all due respect, it's not a new theory. Under the Landrigan decision and under Ms. Lawton, the Supreme Court has made it clear, and this court recognizes that it's greater versus Greenhalgh's. Let me ask it a different way. If one or more members of the panel does not buy that argument, do you have to lose? Well, Your Honor, it's our position that … It's your fallback. With all due respect, we would like this court to decide the issue on the Greenhalgh's decision. It is clearly established Supreme Court authority, and the sum evidence standard is based on a different liberty interest. The amount of process due is directly tied to the liberty interest, and this court's previous decisions in Biggs, Irons, Sass, the more recent decision in Hayward has failed to address that analysis in Greenhalgh's. And Greenhalgh's has been very clear that the amount of process due to prevent against arbitrary decisions bears a direct correlation to the liberty interest involved. That's why cases involving parole revocation, disciplinary proceedings such as Hill and Wolf, which was discussed in Greenhalgh's, those cases involve fact-finding. They involve looking at something that happened in the past and making a determination based on past facts about whether some fact is true that involves state action. Parole determinations are forward-looking. There are some past facts, but they are a subjective determination, and the Supreme Court was very clear in Greenhalgh's that subjective determinations where the government is given discretion, that can involve, discretion involves a decision where reasonable minds can differ on the outcome. And because it's a discretionary determination, the liberty interest involved is relatively small. Inmates who are sentenced to life have a mere hope of parole, and it's a mere hope of early release on parole. It's a possibility. By contrast, in a disciplinary violation where an inmate loses credits, there's clear statutory language that says an inmate who violates the rules is entitled to a hearing, he's entitled to some process, some fact-finding, and then he loses X number of credits based on the type of violation. It's much more clear-cut. Counsel, in the previous argument, Ms. Knox mentioned that the same standard applies to the governor as applies to the board. Do you agree with that? That's correct. The California Supreme Court in Rosencrantz stated that the same statutory and regulatory criteria apply to the governor, and the governor considers the same set of facts as the board. All right. And under Proposition 8, which has been found to be constitutionally sound under California law, the governor is given the final check on board decisions. All right. Again, state law provides greater procedural protections, but the California ‑‑ excuse me, the United States Supreme Court has said the federal constitution provides the minimum amount of process due. The Supreme Court said it in the Greenwood decision. In Cruzan, the Supreme Court said the federal constitution does not attempt to cover every possible phase of a subject. The only way that federal due process can be enlarged by state law is if the state enlarges the liberty interest, and California has not enlarged the liberty interest beyond that contemplated by Greenwoods. And I would reserve the rest of my time for rebuttal. One question about Hayward. Yes. What is the impact of Hayward in this case as opposed to the last case? In this case, the governor relied on several factors. The inmate had an extensive history of drug abuse. Hayward, there was some reliance primarily on the crime alone. Here we have an extensive history of drug abuse, a longstanding unstable relationship with the victim who was Mr. Eastman's drug dealer in this case. There was evidence of premeditation and planning in this case. And more importantly, there was evidence after the conviction because Mr. Eastman was asked repeatedly why he allowed this relationship with the victim to continue. The victim was very abusive to Mr. Eastman and his family, and he said he couldn't explain it. He didn't know why. And so the governor found that he had failed to gain insight into the reasons that caused him to commit this crime. Thank you, counsel. Thank you. We'll hear from Petitioner or the appellee in this case. Good morning, Your Honors. May it please the Court, Rich Pfeiffer on behalf of the appellee, Richard Eastman. Let me first address some of the comments made by the Deputy Attorney General. I believe this Court is bound by McQuillan, Biggs, Sass, Irons, Hayward. The Court has spoken repeatedly. Actually, McQuillan holds that once granted a parole date, the liberty interest actually is greater. And unless there's any questions, I think the liberty interest is. Well, my only question is about the application of those cases here. You have a situation in which reliance was made not only on the severity of the crime but on other factors such as drug abuse, as counsel pointed out, an inability to understand the causes of his own criminal behavior, very unstable social history. I think there were some other factors as well, all of which appear to me to have some support in the record. Why aren't those sufficient reasons? Well, I can address those. First of all, there was drug abuse. There's no question there was drug abuse. In Hayward, there was drug abuse. In virtually probably more than 95% of these cases, there was drug abuse or alcohol abuse. And that inherently gets these people to do things that they wouldn't normally do, which is why Mr. Eastman ended up in prison. But those are the historic factors that will never change. There was some drug abuse in prison and relapse as part of learning how to become abstinence-free. It's been a significant amount of time. I believe it's been about 14 years since or 13 years since there's last evidence of marijuana use in prison. Despite that, we have the government's psychologists. These aren't people that Mr. Eastman went out and hired to get a favorable opinion, who have continually rendered favorable decisions in assessing his risk to public safety if released. And April 7th of 2006 was the last one, and they found that his risk of violence in the community was in the low range. In July 10th of 2003, the site recognized the offense as unique and unlikely to be repeated, and there were no significant risk factors. And those came after this case was reversed by the governor. There have been actually three grants of parole and three reversals by the governor. I've had some cases with as many as six and seven grants of parole and reversals. It just keeps coming until the courts release these people. The only legitimate way out of prison for a life inmate in California is through the courts. I believe it's less than one-third of one percent actually get out through the system, and most of those inmates have writs pending in the courts. And the attorney general's- So why does that-I don't understand why that's a factor. I mean, there's always the possibility of parole, but it's never more than a possibility under the sentence that was initially imposed. So where does that take us? To deny parole, the burden is on the government to show that release today at the time of the hearing poses an unreasonable risk to public safety. The government's own professional psychologists in this case have found that doesn't exist. But what you're really doing is asking us to review this de novo. You're saying, well, here's the record, and you can make a better decision than they made, but that isn't really our standard of review, even under the cases that we've decided previously. We're still looking to see whether the state's determination was unreasonable as an application of established federal law. Any of the violations in prison Mr. Eastman had were significantly in the past. He's been in prison for almost a quarter of a century. And the last violation was, I believe, 13 years ago. That's a significant amount of time. People don't stay in prison because they violate a prison rule 13 years ago. As the Attorney General pointed out, they can be assessed more time for a violation, and continued violations could show continued or lack of rehabilitation. Mr. Eastman has showed rehabilitation. He has gone through the process. You have to look at what is the risk to the public safety. And the overriding concern in this case is the commitment offense. And as the Attorney General pointed out, Mr. Eastman and his family had been brutalized by this victim multiple times, and there's a question as to why didn't they just cut ties with the victim. And, I mean, they called the police. The family called the police. Mr. Eastman actually refused to press charges against him when he was beat so severely he was put in the hospital and needed reconstructive surgery. He said to the parole board that that was a mistake. He should have done it. The victim was a lot larger than Mr. Eastman. He beat him up repeatedly. This family had befriended the victim. He had no place to go. They had taken him into their own home. When you compare these facts with those in Hayward where the provocation was the victim threw a beer bottle at the defendant, how many times did Mr. Eastman, I mean, Mr. Eastman has taken full responsibility for this crime, but how many times did he have to be beat up, put in the hospital, almost killed by the victim? And, granted, Mr. Eastman wasn't perfect. That's why he went to prison. But how long can you keep him in prison when all of the professionals find no risk to public safety today? The remedy in this case, normally the remedy would be to remand it back to the governor. To remand it back to the governor would be futile because the governor is three times, two governors have reversed the grant of parole. The parole board, which grants parole in approximately 3% of the time, has granted parole to Mr. Eastman three different times. They were experienced on these cases. They sat across the table from Mr. Eastman. They asked him difficult questions. They got to see his reaction. They got to learn who he is, the level of insight he has today, the remorse he has for what he's done. And three different times that board, made up of almost entirely of police officers or law enforcement, has found Mr. Eastman suitable for parole. The governor's never sat across the table from Mr. Eastman. Never talked to him. Goes back to looking at the cold record, as unfortunately this court has to do too. I would love for you to meet Mr. Eastman. Mr. Eastman is a changed man from the time he went to prison. If he wasn't, we wouldn't be here today. He wouldn't have gotten parole dates. And a mere hope of parole, that is accurate in California. It's a mere hope, despite any rehabilitative efforts or proof of rehabilitation. It's until the governor and the board are held to show what evidence poses a significant risk to public safety, these inmates aren't going home. And they keep going back to the mantra of relying on the commitment offense and the unstable social history. Those are the factors that will never change. And as Hayward and all the other cases in Biggs and Irons are saying, there comes a point in time where that's a violation of due process. This is a case that has become a violation of due process. And also in the remedy, I would respectfully request that this court find that he should have been released in 2002 and credit his parole with the time he served in excess of the time that was calculated by the Board of Parole Hearings at that date, on May 16, 2002, and credit that against his parole. Mr. Eastman is a better man than me to take absolutely full responsibility for this crime. The victim had his part in it. And when the police didn't get, if they would have only done what was reasonable at the time, Mr. Eastman wouldn't have done what was unreasonable. I can't see a commitment offense that wasn't provoked any greater than this. In Gray, Mr. Gray had taken his wife's car keys and taken the car because his wife had hooked up with her former husband. And she called and said, I'm coming to get the car. At that point, Mr. Gray armed himself. And he gave the car keys when they met and they were about to leave. And then the former husband says, I'm going to teach him a lesson for taking the car. And he came at Mr. Gray, who shot him. And that wasn't enough. All right, thank you, Counsel. Your time has expired. Ms. Ahrens, you have some reserve time. Thank you, Your Honor. Counsel stated how many times did Mr. Eastman have to be beaten up. Well, that's precisely what the governor was looking at. This was a longstanding relationship of abuse. And Mr. Eastman had a relationship of a drug addict with a drug dealer. And he was beaten up over and over rather than expelling the victim from his home. He put up with this relationship. This is not about retrying the facts of the case or reweighing the evidence. The sum evidence standard under Hill does not require reweighing. In fact, the Supreme Court said the sum evidence standard under Hill is procedural in nature, not substantive. That means that this Court looks at the quantity of evidence, not quantity, and asks, is there some evidence? Is there some support in the record for the decision? That's the end of the inquiry. It's not about reweighing the evidence, not about looking at the crime and all of the mitigating factors after the crime. With regard to the psychologist report, the psychologist didn't have the benefit of Mr. Eastman's statement at the hearing. This was a report that was prepared before the hearing, and there's never been any requirement that the decision-maker rely exclusively on one source of evidence at the hearing in making his decision. Finally, remand would be proper. Under the AEDPA, it is required that the Court evaluate the state court decision under controlling Supreme Court authority that existed at the time of the state court decision. Now, that applies to Supreme Court authority, but presumably it would apply to even Ninth Circuit authority. The state court has to have the benefit of this Court's decisions regarding federal due process when it makes its decisions. Therefore, the governor or the parole board would have to have the benefit of this Court's later decisions and be able to apply the due process standards outlined by this Court on remand. The proper remedy for a denial of due process is further proceedings in compliance with due process, and Hayward and these decisions simply didn't exist at the time of the governor's decision. And I would submit unless the Court has any further questions. Thank you, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Gibson